# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROYCE HAMPTON FARRAR,
Petitioner,

v.

EDWARD KLEM, *et al.*,
Respondents.

:
:
:
:
:
:
:
:
:

CIVIL ACTION

NO. 05-2663

## Memorandum and Order

YOHN, J.                                                    March ___, 2006

Petitioner Royce Hampton Farrar, a prisoner in the Mahoney State Correctional

Institution at Frackville, Pennsylvania, has filed a *pro se* petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254, asserting eleven separate claims for relief.  After conducting a *de*

*novo* review of the Report and Recommendation of United States Magistrate Judge Jacob P.

Hart, and upon consideration of petitioner's objections thereto, I have determined that Farrar's

petition will be denied.

### I. FACTUAL & PROCEDURAL BACKGROUND

A.      **Petitioner's Underlying Offense & Conviction**

This petition arises out of Farrar's November 7, 1997 conviction for rape and burglary in

the Philadelphia County Court of Common Pleas.  The Superior Court of Pennsylvania

summarized the facts as follows:

> The victim, on May 19, 1992, at approximately 2:00 a.m., was awakened by a
> noise in her hallway and saw a black male wearing a mask, a gray hooded
> sweatshirt and black pants, holding a gun, descending the staircase from the third

> floor.  The intruder threatened the victim with a gun, handcuffed her, placed a pillowcase over her head and raped her in her bedroom on the second floor of her home.  After this assault the attacker asked for and took money that the victim had offered him earlier in the evening.  The victim escaped from her home by jumping out a second story window when her attacker went downstairs to look for the money.

*Commonwealth v. Farrar*, 1017 Phila. 1998, slip. op. at 1-2 (Pa. Super. Ct. Feb. 8, 2000).

Petitioner, his identical twin brother Dakeer Farrar, and their father Roy Farrar, were the victim's neighbors.   Roy and Dakeer both testified that they awoke on May 19 to a loud shriek. (N.T. 11/3/97, 143-44; 11/6/97, 10-11).  Dakeer stated that, at the time he heard the shriek, his brother was not in his room on the third floor.  Dakeer headed down to the kitchen on the first floor to see if Royce was there, and on his way, ran into his father on the second floor.  (N.T. 11/3/97, 145; 11/6/97, 12).  He told his father that Royce was not in his room.  (N.T. 11/3/97, 147-48.)  Roy Farrar then went outside to look for petitioner and found the victim in her alleyway.  He brought her into his home, asked her what had occurred, and called the police. (NT. 11/6/97, 16-18.)   A few minutes later, Dakeer told his father he found Royce sleeping in a spare bedroom on the third floor of the house.  (N.T. 11/3/97, 150-52.)

In conducting their investigation, the police determined that the only point of entry into the victim's home was the rear third story window, which was only accessible by a ledge running between the victim's residence and the third floor of the Farrar residence.   On May 28, 1992, police executed a search warrant on the Farrar residence, and the suppression court summarized its findings as follows:

> [P]ursuant to search warrant 74623, . . . Lieutenant Thomas McDevitt of the Philadelphia Police Department and Police Officer Gillen went to [the Farrar residence] as a result of a complaint of rape which occurred on or about May 19, 1992.  The police were looking for, among other items, a black automatic handgun

2

identified as a 9 millimeter, some items of clothing, and handcuff keys.

[They] arrived at the said premises about 7:30 in the morning and did a cursory search of the premises, recovering none of the items which were sought in the search warrant. They interviewed Roy Farrar, . . . asking about some of the items, more particularly a gun. They received permission of Roy Farrar to interview his two sons, Dakeer Farrar, and Royce Farrar.

The police learned of the existence of a black bee-bee [sic] gun from Dakeer Farrar and during the interview of Royce Farrar they learned that the black bee-bee gun was in the possession of Roy Farrar, Royce Farrar's father.

Further, as a result of the interview with Royce Farrar, the police went to the third floor of the premises and recovered a hand cuff key in a location in the third floor bedroom. . . .

During the course of Royce Farrar's interview or before his interview, he was informed that his father had given permission for him to be interviewed.

(N.T. 4/21/97, 82-84.)

At the suppression hearing, the defense argued that the questioning of petitioner amounted to custodial interrogation, and because it was not preceded by *Miranda* warnings, it violated petitioner's Fifth Amendment rights. In addition, defense argued that the handcuff key and the gun were fruits of this illegal interrogation. In weighing the credibility of the witnesses, the suppression court found that (1) the interrogation of petitioner was not custodial, (2) *Miranda* warnings were not required, and (3) even assuming *arguendo* that petitioner had been the subject of an illegal custodial interrogation, the handcuff key and the gun were admissible under the inevitable discovery doctrine. (N.T. 4/21/97, 84-86.)

At trial, two experts testified that a DNA semen sample on the victim's nightgown matched that of Royce and his identical twin brother Dakeer.[1] (N.T. 11/3/97, 93, 128.) As the

---

[1]Specifically, the experts found that petitioner's DNA type was rare, and the frequency of finding petitioner's DNA type in the African-American population was between 1 in 1 million to 1 in 7.8 million, and that to a reasonable degree of scientific certainty, petitioner or his identical twin brother was the donor of the sperm found on the victim's nightgown. (N.T. 11/3/97, 70-95; 11/5/97, 57-59.)

testimony of Dakeer and Roy Farrar established the whereabouts of Dakeer at the time of the

incident, petitioner was the only DNA match.  The jury subsequently found Royce guilty of rape

and burglary, and on February 11, 1998, petitioner was sentenced to an aggregate term of 13 to

26 years imprisonment.

**B.      Direct Appeal**

Farrar filed his direct appeal on March 12, 1998, asserting only that the evidence

presented at trial was insufficient to support his rape and burglary convictions.  On February 8,

2000, the Superior Court of Pennsylvania affirmed his conviction, finding his challenges

meritless.  *Commonwealth v. Farrar*, 1017 Phila. 1998, slip. op. at 6 (Pa. Super. Ct. Feb. 8,

2000).  Farrar filed a petition for allowance of appeal to the Supreme Court of Pennsylvania on

March 22, 2000, and was denied allocatur on July 25, 2000.  *Commonwealth v. Farrar*, 764 A.2d

1065 (Pa. 2000).

**C.      Petition for Postconviction Relief**

Petitioner next collaterally attacked his conviction in state court on May 3, 2001, pursuant

to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541, *et seq.*  In his

*pro se* petition, Farrar asserted he was denied his constitutionally guaranteed right to counsel,

because trial counsel was ineffective by: (1) failing to bring to the court's attention that although

the officers requested permission from Roy Farrar to question petitioner, that consent was

uninformed; (2) failing to bring to the court's attention that petitioner was unable to competently

make a knowing and voluntary waiver of his Fifth and Sixth Amendment rights; (3) failing to

bring to the court's attention the custodial nature of the at home interview and the lack of

*Miranda* warnings; (4) failing to file a motion for recusal, change of venue, or a mistrial, where

4

petitioner personally knew the daughter of the trial judge; (5) failing to argue at sentencing that Farrar's mental health evaluations were conflicting; and (6) failing to file a timely appeal of the trial verdict and all pretrial rulings.  He also asserted that his appellate counsel was ineffective because he did not investigate trial counsel's ineffectiveness, appeal the pretrial rulings, and raise the issue of the judge's alleged bias.  Petitioner finally argued that his right to a fair and impartial trial was violated because he: (1) was prejudiced by the judge's bias against him, and (2) was prejudiced in front of the jury when, while the jury was at the crime scene, he was conspicuously guarded by several police officers and the court ordered petitioner to leave because the victim could not continue her testimony with him in the room.  *See Pro Se* PCRA Petition ¶¶ 9-12, May 3, 2000.

On July 5, 2001, the court appointed Peter Levin, Esquire, as petitioner's counsel, and he filed an amended petition on February 19, 2002.  This petition alleged petitioner's appellate counsel was ineffective for failing to argue that: (1) petitioner's right to a speedy trial under Pa. R. Crim. P. 600 was violated; (2) trial counsel was ineffective at the suppression hearing, specifically because trial counsel did not claim that a second search warrant was required or that the inevitable discovery doctrine was inapplicable; (3) the suppression court erred in finding that the police received informed consent from petitioner's father to interview petitioner; (4) petitioner, age fifteen at the time of the crime, should have been decertified under the Juvenile Act of Pennsylvania; and (5) the trial court erred in precluding any questioning of the victim regarding her prior rape.  Amend. Pet. Under PCRA 2, Feb. 19, 2002.  In the amended petition, Levin also stated that several of the claims that petitioner raised in his original petition were meritless pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct 1998).

On May 1, 2003, the PCRA court issued the required notice of intent to dismiss pursuant

5

to Pa. R. Crim. P. 907, and on June 2, 2003, the court dismissed the amended petition without a

hearing, concluding that none of the claims underlying the alleged ineffective assistance of

counsel were of arguable merit. *Commonwealth v. Farrar*, No. 0640, Jan. 1996 Term, slip op. at

2 (Phila. County Ct. Com. Pl. Oct. 10, 2003).

Farrar appealed to the Pennsylvania Superior Court, bringing the same claims that he

raised in his amended PCRA petition, as well as challenging the denial of an evidentiary hearing.

The superior court affirmed the dismissal on August 23, 2004, concluding that his claims were

either meritless or waived for failure to provide legal or factual support. *Commonwealth v.*

*Farrar*, 1878 EDA 2003, slip op. at 2-6 (Pa. Super. Ct. Aug. 23, 2004). The Pennsylvania

Supreme Court denied allocatur on May 11, 2005. *Commonwealth v. Farrar*, 876 A.2d 393 (Pa.

2005).

**D.     The Instant Habeas Petition**

Petitioner filed the instant habeas corpus petition on June 6, 2005. On July 13, I referred

the case to Magistrate Judge Hart for a Report and Recommendation. Respondents filed their

response to the petition on October 7 and the magistrate judge issued a Report and

Recommendation on November 22. On January 6, 2006, petitioner filed his objections to the

Report and Recommendation.

## II. STANDARDS OF REVIEW

**A.     Jurisdiction**

Where a habeas petition has been referred to a magistrate judge for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), this court's review of "those portions of

the report or specified proposed findings or recommendations to which objection is made" is *de*

*novo.* 28 U.S.C. § 636(b).  After conducting such a review, this court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

**B.     AEDPA Standards**

Under 28 U.S.C. § 2254, federal courts are empowered to grant habeas corpus relief to a

prisoner "in custody pursuant to the judgment of a State court" where his custody violates the

Constitution of the United States.  28 U.S.C. § 2254(a).  Because the present petition is governed

by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132,

110 Stat. 1214 (codified in scattered sections of 28 U.S.C.), petitioner is entitled to habeas relief

only where the state court proceedings "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law," or "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."  28 U.S.C. § 2254(d)(1).

A state court decision may be "contrary to" clearly established federal law in one of two

ways.  First, a state court decision is contrary to clearly established precedent where "the state

court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Second, a state court decision will be "contrary

to" clearly established precedent "if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result

different from [the] precedent." *Id.* at 406.  A state court decision involves an "unreasonable

application" of federal law, on the other hand, where it "correctly identifies the governing legal

rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.

Habeas relief will also be granted where a state court decision is "based on an

unreasonable determination of the facts."  Under AEDPA, however, factual determinations made

7

by the state court are accorded a presumption of correctness: "a federal court must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)).  Thus, to prevail under this "unreasonable determination" prong, petitioner must demonstrate that the state court's determination of the facts was objectively unreasonable in light of the evidence available; mere disagreement with the state court – or even a showing of erroneous factfinding by the state court – will be insufficient to warrant relief, provided that the state court acted reasonably.  *See Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001) (citing *Williams*, 529 U.S. at 409); *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000) (citing same).

**B.      Exhaustion & Procedural Default**

        In addition, before a federal court can review the merits of a state prisoner's petition for a writ of habeas corpus, the court must determine whether the petitioner has met the requirements of the doctrines of exhaustion and procedural default.

        **1.      Exhaustion**

        A federal court will not grant a state prisoner's petition unless available state court remedies on the federal constitutional claims have been exhausted.  28 U.S.C. § 2254(b)(1).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A).  This exhaustion rule requires petitioner to "fairly present" his federal claims at each level of the state court system. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (citations omitted).  To "fairly present" a claim, petitioner must

8

present its "factual and legal substance to the state courts in a manner that puts them on notice

that a federal claim is being asserted." *Id.* at 261 (citations omitted). While petitioner need not

cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 277 (1971), he

must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights" before presenting those claims here. *Duncan v. Henry*, 513 U.S. 364, 365 (1995)

(quoting *Picard*, 404 U.S. at 275). Under this rule, a federal court must dismiss without

prejudice habeas petitions that contain any unexhausted claims. *Slutzker v. Johnson*, 393 F.3d

373, 379 (3d Cir. 2004). This dismissal requirement does not apply, however, in cases where the

state courts would not consider the unexhausted claims because they are procedurally barred by

state law. *Doctor v. Walters*, 96 F.3d 675, 681 (3d Cir. 1996). However, in that situation the

petitioner must still overcome the concomitant doctrine of procedural default. *Id.* at 683.

### 2.    Procedural Default

The doctrine of procedural default bars federal habeas relief when a state prisoner has

defaulted on his federal claims in state court pursuant to an independent and adequate state

procedural rule. *Id.* For example, failure to present federal habeas claims to the state courts in a

timely fashion results in procedural default. *See O'Sullivan*, 526 U.S. at 848 (citing *Coleman v.

Thompson*, 501 U.S. 722, 731 (1991)). Like petitioners who have failed to exhaust their state

remedies, "a habeas petitioner who has failed to meet the State's procedural requirements for

presenting his federal claims has deprived the state courts of an opportunity to address those

claims in the first instance." *Id.* The doctrine of procedural default therefore ensures that state

prisoners cannot evade the exhaustion requirement of § 2254 by defaulting their federal claims in

state court.

Absent a showing that a procedural default should be excused, this court is barred from reviewing a petitioner's defaulted claims.  As the Supreme Court made explicit in *Coleman v. Thompson*, procedural default can be excused in only two ways:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750.  To show "cause," petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).[2]  To show "actual prejudice," a petitioner must demonstrate that the alleged errors "so infected the entire trial that the resulting conviction violates due process."  *United States v. Frady*, 456 U.S. 152, 168-69 (1982).

The second manner in which a petitioner's procedural default can be excused – the "fundamental miscarriage of justice" exception – "will apply only in extraordinary cases, i.e., 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000) (quoting *Murray*, 477 U.S. at 496.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998)  To establish such a claim, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory

---

[2] Examples of "cause" include showing that "the factual or legal basis for a claim was not reasonably available to counsel," that "some interference by officials made compliance impracticable," or that "some external impediment prevented counsel from constructing or raising the claim."  *Murray*, 477 U.S. at 488-92.

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). Further, actual innocence "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Id.* at 329.

### III. DISCUSSION

In his habeas petition, Farrar raises eleven claims,[3] including: (1) his appellate (or PCRA counsel) was ineffective because he failed to properly brief the argument that trial counsel was ineffective at the suppression hearing; (2) direct appellate counsel was ineffective for failing to challenge the suppression court's findings of fact; (3) all counsel were ineffective for failing to challenge the legality of petitioner's interrogation in light of his inability to knowingly and voluntarily waive his rights; (4) all counsel were ineffective for failing to argue that his father's consent to question petitioner was uninformed; (5) the PCRA court erred in determining that the BB gun and handcuff key were the product of a legal search; (6) the suppression court erred in concluding that certain evidence was admissible pursuant to the doctrine of inevitable discovery; (7) the trial court erred in determining that Farrar's inevitable discovery claim was without merit; (8) the suppression court erred in "sanctifying the questioning of the fifteen-year-old petitioner" and permitting the admission of the fruits of the interview; (9) the suppression court erred in concluding that the questioning of petitioner was not custodial interrogation; (10) the PCRA court erred in failing to address the claims determined to be meritless by petitioner's counsel and permitting counsel to remain; and (11) petitioner was sentenced beyond the statutory maximum

---

[3]The court notes that for sake of clarity, it will list and address petitioner's claims thematically, for example, all ineffective assistance of counsel claims will be analyzed first, rather than in the order presented in petitioner's habeas petition.

11

based on facts that were not presented to the jury and proven beyond a reasonable doubt.

After conducting a *de novo* review, this court agrees with the findings of Magistrate Judge Hart and concludes that petitioner's claims do not provide grounds for federal habeas relief. I will address each of petitioner's claims in turn, beginning with his ineffective assistance of counsel claims and his Fourth and Fifth Amendment claims. Finally, I will examine his argument that the PCRA court failed to consider all his *pro se* claims.[4]

## A.    Ineffectiveness of PCRA Counsel

In his habeas petition, Farrar claims that "appellate counsel was ineffective where he failed to include relevant legal authority in support of appellant claim . . . of illegal search and seizure." Habeas Pet. 10. Before conducting any analysis, it is important to clarify this claim and its basis. First, petitioner must be arguing that his PCRA counsel was ineffective for failing to properly brief Farrar's claims of illegal search and seizure, because Farrar only raised a search and seizure issue on PCRA review, not on direct review. Second, the search and seizure issue raised on PCRA review was actually a layered ineffective assistance of counsel claim: Farrar argued that his direct appellate counsel was ineffective for failing to assert that his trial counsel was ineffective in arguing the search and seizure issues at the suppression hearing. The Pennsylvania Superior Court found this claim to be waived because it was not properly briefed by PCRA counsel. Now, Farrar is contending that his PCRA counsel was ineffective for failing to properly brief this layered ineffectiveness claim to the PCRA court.

---

[4]Petitioner did not file an objection to Judge Hart's denial and dismissal of his eleventh claim, which asserted that he was sentenced beyond the statutory maximum based on facts that were not presented to the jury and proven beyond a reasonable doubt. Consequently, I adopt Judge Hart's decision to dismiss Farrar's eleventh claim.

In his Report and Recommendation, Magistrate Judge Hart found this claim to be non-cognizable, and I agree.  Ineffective assistance of counsel on collateral appeal does not rise to the level of a federal constitutional violation and therefore cannot constitute grounds for federal habeas relief.  *See Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); 28 U.S.C. § 2253(i).  As petitioner is alleging his PCRA counsel was ineffective, his claim is not cognizable, and he is not entitled to habeas relief on that basis.[5]

## B.     Petitioner's Claim of Ineffectiveness on Direct Appeal

Petitioner also asserts that his direct appellate counsel was ineffective for failing to challenge the suppression court's alleged contradictory findings of fact, specifically, that he had been subject to a custodial interrogation, yet *Miranda* warnings were not required.[6]  Magistrate Judge Hart concluded that petitioner's claims are procedurally defaulted, and petitioner objects. After a *de novo* review, the court agrees with Magistrate Judge Hart.

As discussed above, a claim is procedurally defaulted if the petitioner failed to exhaust his state court remedies and is barred from presenting his claim to the state courts due to an independent and adequate state procedural rule.  *Coleman*, 502 U.S. at 732.  Petitioner's claim is unexhausted and procedurally defaulted because he never presented it to the state courts,[7] and a

---

[5]To the extent that petitioner may be asserting an underlying Fourth Amendment claim, that claim is addressed *infra* in Section D.

[6]Petitioner's claim, which he lists as "Ground three" for habeas relief, specifically states: "Counsel was ineffective where he failed to include in appeal that Suppression Court erred where it made a finding of contradicting facts. . . . : (1) the presence of the necessary elements to apply the inevitable discovery doctrine, and (2) that the interview of the juvenile Petitioner was legal; an interrogation, and that Miranda warnings were not necessary." Habeas Pet. 10.

[7]In his *pro se* PCRA petition, petitioner claimed direct appellate counsel was ineffective for failing to "bring to the attention of the court" the custodial nature of the at-home

new state petition would also be deemed time-barred under Pennsylvania law.  42 Pa. C.S.A. §

9545(b) (requiring the filing of a petition within one year of the date judgment becomes final).

Thus, in order to have the court consider the merits of his claim, petitioner must show "cause and

prejudice" or a "fundamental miscarriage of justice" to excuse default.

    In his objections, petitioner claims that "cause and prejudice" exist to excuse default

because PCRA counsel failed to raise appellate counsel's ineffectiveness.   A counsel's failure to

properly preserve a claim for state court review may serve as "cause" to excuse procedural

default.  *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000).  However, only ineffectiveness of

counsel of a constitutional magnitude can constitute cause to excuse procedural default.  *Id.*

Because the ineffectiveness of PCRA counsel is not a constitutional issue,  *Finley,* 481 U.S. at

554, Farrar's claim of PCRA counsel ineffectiveness fails to provide cause for default.

    Similarly, Farrar has not supplemented his claim with any evidence of factual innocence

that would show that the failure to consider his claim would result in a fundamental miscarriage

of justice.  In his objections, petitioner argues that "it is the presence of unconstitutionally

tainted, circumstantially misleading evidence that has clouded the fact of the Petitioner's

innocence." Obj. 3.  However, these arguments do not satisfy petitioner's burden under *Schlup,*

which requires that petitioner present new reliable evidence that demonstrates no reasonable

---

interrogation. *Pro Se* PCRA Petition ¶¶ C & D, May 3, 2000.  In addition, in his amended PCRA
petition, Farrar alleged that appellate counsel was ineffective because he did not argue his trial
counsel was ineffective for failing to argue the inevitable discovery doctrine was inapplicable.
However, petitioner never raised any claims of ineffective assistance of direct appellate counsel
involving the failure to identify allegedly contradictory findings of fact by the suppression court,
and thus, those claims are unexhausted.  To the extent that petitioner is arguing that the
suppression court incorrectly applied the doctrine of inevitable discovery, that claim is discussed
*infra* Section III.D.

juror would find him guilty.  513 U.S. at 321-22.  Instead, DNA evidence establishes that either

petitioner or his twin brother Dakeer committed the rape, and testimony of Roy Farrar excludes

Dakeer from being the perpetrator.  As such, petitioner's claim of ineffectiveness assistance of

direct appeal counsel is procedurally defaulted and does not constitute a basis for habeas relief.[8]

## C.    Remaining Claims of Ineffectiveness Against All Prior Counsel

### 1.    Failure to Argue Unknowing and Involuntary Waiver of Right Against Self-Incrimination

Petitioner also claims that all prior counsel were ineffective for failing to argue that Farrar

did not knowingly and voluntarily waive his *Miranda* rights.[9]  As with the claim above,

Magistrate Judge Hart found that the doctrine of procedural default barred petitioner's claim.

Over petitioner's objection, I agree.

As discussed above, a claim is procedurally defaulted if the petitioner failed to exhaust

his state court remedies and can no longer present his claim to the state courts.  *Coleman*, 502

---

[8]Moreover, petitioner's ineffective assistance of counsel claim, that counsel failed to argue that the suppression court made contradictory findings of fact, is meritless.  The suppression court did not make contradictory findings of fact.  Rather, the suppression court found that the gun and the handcuff key were admissible because there was no custodial interrogation and that *Miranda* warnings were not required.  In addition, the court found that even if it ruled that Farrar was subject to a custodial interrogation, the same evidence would have been admissible under the doctrine of inevitable discovery.  (N.T. 4/21/97, 84-86).  Therefore, any claim raised by counsel alleging that the suppression court made contradictory findings of fact would have been meritless.  As counsel cannot be ineffective for failing to raise meritless arguments, *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000), petitioner's claim of ineffective assistance of counsel fails.  *See infra* Section III.C.2.

[9]Petitioner articulates this claim as "Ground ten" in his habeas petition, stating: "Trial counsel and all subsequent representation on appeal rendered ineffective assistance where they failed to argue Petitioner's inability to effect [sic] a knowing and voluntary waiver of his constitutional rights to protection from self-incrimination, and that use of those statements arrived as a result of his illegal interrogation violated due process."  Habeas Pet. 12.

15

U.S. at 732.  As stated by the United States Supreme Court, in order to "'protect the integrity' of

the federal exhaustion rule," a court must "ask not only whether a prisoner has exhausted his

state remedies, but also whether he has properly exhausted those remedies."  *O'Sullivan*, 526

U.S. at 848. With respect to this claim, Farrar has failed to properly exhaust his state court

remedies.  Petitioner did not raise this claim until his first *pro se* PCRA petition, and then did not

present it in his counseled, amended PCRA petition, or preserve it in the appeal.  It is

consequently unexhausted. *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (stating "In

order for a claim to be exhausted, it must be "fairly presented"  to the state courts "by invoking

one complete round of the State's established appellate review process.") (citation omitted);

*Trowery v. Walters*, 45 Fed. Appx. 206, 207 (3d Cir. 2002) (finding petitioner's claim

unexhausted when it was first raised in his *pro se* PCRA petition, but was not included in his

counseled amended petition).   In addition, because Farrar had the opportunity to raise this claim

on direct appeal, yet did not bring it until his *pro se* PCRA petition, the claim is waived under

Pennsylvania law.  42 Pa.C.S.A. § 9544(b) (stating claims not presented at trial or on earlier

appeal are waived and therefore, not grounds for PCRA relief). Thus, any attempt to present this

claim in another PCRA petition would fail, and as a result, petitioner's claim is procedurally

defaulted.

   Furthermore, petitioner has not established cause for his default.   In his objections, Farrar

asserts that default should be excused because PCRA and direct appellate counsel were

ineffective for failing to raise prior counsel's ineffectiveness.  As stated above, a counsel's failure

to properly preserve a claim for review in state court may serve as "cause" to excuse procedural

default.  *Edwards,* 529 U.S. at  451.  However, the exhaustion doctrine "requires that a claim of

ineffective assistance [of counsel] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Carrier*, 477 U.S. at 489.

Here, petitioner has not presented and exhausted these layered claims of PCRA and direct appellate counsel ineffectiveness, which he asserts as cause for default, in the state courts. Farrar has never asserted in state court that PCRA counsel was ineffective for failing to raise direct appellate counsel's ineffectiveness in arguing the waiver issue. Regardless, as discussed above, claims of ineffective assistance of PCRA counsel are not grounds to excuse procedural default. *Finley,* 481 U.S. at 554.

Furthermore, while Farrar argued in his *pro se* PCRA petition that direct appellate counsel was ineffective for failing to investigate trial counsel's ineffectiveness, *see Pro Se* Petition ¶ 10(m), this claim was not presented in his counseled, amended PCRA petition and not preserved in his appeal of the denial of PCRA relief. Nor has petitioner ever argued that direct appellate counsel was ineffective for failing to assert trial counsel's ineffectiveness regarding the waiver issue. This claim is consequently unexhausted. *Carpenter*, 296 F.3d at 146; *Trowery*, 45 Fed. Appx. at 207. It is also procedurally defaulted because the time for filing a PCRA petition on this underlying claim has expired. *See* 42 Pa.C.S.A. § 9545. Thus, petitioner's claim of direct appellate counsel's ineffectiveness cannot constitute "cause" for default. As a result, petitioner's claim that all prior counsel were ineffective for failing to argue the waiver issue remains defaulted, and it will be dismissed.

**2.     Failure to Argue Petitioner's Father's Uninformed Consent**

In addition, Farrar argues that all counsel were ineffective because they failed to challenge the suppression court's conclusion that petitioner's father gave informed consent to the

17

police when they asked to question petitioner.[10]  While petitioner's claim is not procedurally

defaulted because he presented it to the state courts,[11] Magistrate Judge Hart found the underlying

claim to be meritless.  Petitioner objects, largely restating the arguments that he raised in his

habeas petition.  I agree with Magistrate Judge Hart and will overrule petitioner's objection.

    To establish that petitioner's counsel were constitutionally ineffective when they failed to

challenge his father's alleged consent, Farrar must meet the test enunciated by the United States

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) that his counsel's

representation was deficient such that it "fell below an objective standard of reasonableness," and

(2) that the deficient performance prejudiced his trial to the extent that it undermined confidence

in the trial's outcome.  466 U.S. at 687.  Because the Pennsylvania Superior Court considered

petitioner's claim and found that petitioner's appellate counsel was not ineffective,[12] I must apply

_____

[10]Petitioner frames this issue as "Ground eight" for habeas relief, stating "Pre-trial and all
subsequent counsels rendered ineffective assistance where they failed to investigate, preserve and
articulate claim that father's consent to question juvenile Petitioner was uninformed. . . The
Suppression Court listed in its findings of facts that officers received permission to interview the
15 year old Petitioner, that the father consented.  This consent, however, was "uninformed.""
Habeas Pet. 12.

[11]I note that to the extent this claim contains an allegation that PCRA counsel was
ineffective for failing to raise the father's consent on PCRA review, that claim is procedurally
defaulted because it has not been presented to state courts.  However, even if Farrar's procedural
default of this claim was excused, a claim of ineffective assistance of PCRA counsel is not
cognizable on habeas review, and is therefore not ground for habeas relief.  *Finley*, 481 U.S. at
554.

[12]The Superior Court relied upon the standard of ineffective assistance of counsel
articulated by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa.
1987).  To overcome the presumption of counsel's effectiveness, a petitioner has the burden of
demonstrating that (1) his underlying claim is of arguable merit; (2) the particular course of
conduct pursued by counsel did not have some reasonable basis designed to effectuate his
interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the
outcome of the challenged proceeding would have been different.  *Id.*  Both the Third Circuit and

18

the deferential standard provided by AEDPA to decide whether the superior court's decision was "contrary to" *Strickland*, "involved an unreasonable application" of *Strickland*, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Factual determinations made by the state court "are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).

Using AEDPA's deferential standard to examine the superior court's decision that petitioner's appellate counsel was not ineffective, I agree with its conclusion that counsel's performance was not deficient for failing to challenge Roy Farrar's consent because such a claim has no merit. On PCRA appeal, the superior court found that the suppression court, as the fact finder, made a credibility determination on the consent issue, based on the testimony of both the interviewing police officer and Roy Farrar. *Commonwealth v. Farrar*, 1878 EDA 2003, slip op. at 4. Under Pennsylvania law, the superior court held that this credibility decision was entitled to deference. *Id.* Accordingly, the court determined that any appeal by petitioner's counsel on this issue would have been denied as meritless, and counsel could not be found ineffective for failing to raise a meritless issue. *Id.*

Here, the superior court's decision that counsel was not ineffective is not "contrary to" nor does it involve an "unreasonable application" of *Strickland*. The decision of the state court does not contradict Supreme Court precedent and is consistent with federal law that, under

---

the Pennsylvania Supreme Court have held that this standard is materially identical to that set forth in *Strickland*. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000) (finding that the Pennsylvania standard is "not contrary to" the Strickland test); *Pierce*, 527 A.2d at 976-77 (holding that Pennsylvania's ineffectiveness standard and the Strickland test "constitute the same rule").

*Strickland*, counsel cannot be deemed constitutionally ineffective for failing to raise a meritless claim. *Werts v. Vaughn,* 228 F.3d 178, 203 (3d Cir. 2000).  Furthermore, the court applied the *Strickland* standard reasonably to the facts of the present case.   The court reasonably determined that the suppression court made a credibility finding that was entitled to deference, and had Farrar's counsel challenged this finding, counsel would have been unsuccessful.   Thus, the superior court logically found that Farrar's representation did not "fall below an objective standard of reasonableness" when his counsel did not challenge the suppression court's decision regarding  his father's consent.

Finally, the state court decision was not "based on an unreasonable determination of the facts."  Farrar has not presented any clear and convincing evidence that the superior court's factual determinations were objectively unreasonable in light of the evidence available.  Furthermore, given that the suppression court's finding of consent rests on a credibility determination of two witnesses, it is entitled to deference because federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."[13]  *Marshall v. Longberger*, 459 U.S. 422, 434 (1983).

Thus, petitioner has failed to show that the superior court's decision to deny PCRA relief on his ineffectiveness claim was contrary to or involved an unreasonable application of federal law, or resulted in a decision that was based on an unreasonable determination of the facts.  Accordingly, petitioner's claim of ineffective assistance of counsel, based on his counsel's failure

---

[13]In his objections, petitioner argues that there was no credibility issue because "conflicting testimony was given by the supervisory detective," and the suppression court erred in basing its findings of fact upon it.  However, the suppression court's decision to believe the supervisory detective's testimony is exactly the type of credibility determination entitled to deference under AEDPA.

to raise the validity of his father's consent, is without merit.

**D.      Fourth Amendment Claims**

In addition to his ineffective assistance of counsel claims, petitioner alleges multiple violations of his federal Fourth Amendment rights to be free from unreasonable searches and seizures.   Petitioner first alleges that the BB gun and handcuff key recovered from his residence were the product of an illegal search by the police.[14]   In addition, he argues that the suppression and trial courts incorrectly applied the doctrine of inevitable discovery to these pieces of evidence.[15]  Magistrate Judge Hart concluded that even if these claims were not procedurally defaulted, they were barred by the United States Supreme Court decision in *Stone v. Powell*, 428 U.S. 465 (1976).  Petitioner objects to this conclusion, but I will overrule his objection and dismiss these claims.

In *Stone v. Powell*, the Supreme Court held that where the state has afforded a habeas petitioner "an opportunity for a full and fair litigation" of his Fourth Amendment claims, a federal court is precluded from considering these claims on collateral review.  428 U.S. at 481-82.  This doctrine is based on the principle that direct review is the principal avenue for

_____

[14]Petitioner frames this issue in terms of PCRA court error, stating, in his "Ground one" for habeas relief: "PCRA court erred where, in denying Appellant's claim on an illegal search and seizure it ruled in contrast with presiding case law and Constitutional rule."  Habeas Pet. 10.

[15]Petitioner frames this issue in terms of both suppression and trial court error.  Petitioner raises his claim of suppression court error in his "Ground four" for habeas relief, stating that the "Suppression Court erred where it permitted evidence under Inevitable Discovery Doctrine though prosecution failed to satisfy the preponderance of evidence burden of proof which must be met to apply doctrine."  Habeas Pet. 11.  Petitioner raises his claim of trial court error in "Ground five" for habeas relief, stating: "Court of Common Pleas erred where it found that Petitioner's claim that the Inevitable Discovery Doctrine did not apply was without merit."  *Id.*

challenging a conviction, and "[w]hen the process of direct review -- which, if a federal question is involved, includes the right to petition this Court for a writ of certiorari -- comes to an end, a presumption of finality and legality attaches to the conviction and sentence." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. *Brecht v. Abrahamson*, 507 U.S. 619, 633 (U.S. 1993). Thus, in the case of habeas petitioner's Fourth Amendment claims, *Stone v. Powell* precludes reexamination of the state court's determination even if a federal court believes that a claim was wrongly decided, so long as there was a full and fair opportunity to litigate the claim. *See Gilmore v. Marks*, 799 F.2d 51, 56 (3d Cir. 1986) ("Under *Stone v. Powell*, a federal court may not reexamine the state court's determination that no Fourth Amendment violation occurred"). Specifically, the Third Circuit has ruled that a habeas petitioner has an opportunity for full and fair litigation where the state courts provided an opportunity for a pretrial suppression motion, and the Superior Court considered the Fourth Amendment claim on appeal. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978).

In his objections to the Report and Recommendation, Farrar argues he has not had a full and fair opportunity to raise his Fourth Amendment claims. However, Farrar has had opportunities at every level of the state court system to assert his Fourth Amendment claims. He challenged the admissibility of the BB gun and handcuff key prior to trial, arguing that they were seized as a result of an illegal interrogation of Farrar. (N.T. 4/21/97, 84-86.) The suppression court rejected this argument, concluding that there was no custodial interrogation and that even if there was, the BB gun and handcuff key would have been inevitably discovered. (*Id.*) While Farrar could have raised these issues on direct appeal and then through a petition for writ of

certiorari to the United States Supreme Court, he did not.  Instead, after his conviction became

final, Farrar argued in his PCRA petition that the BB gun and key should have been suppressed

on the grounds that the police were required to obtain a second search warrant after interviewing

him and finding out about the gun and the handcuff key.  The PCRA court rejected this

argument, concluding that the police were in the home pursuant to a valid warrant, "and that the

search had not concluded when Farrar by his own statements aided the police in finding that

which would have been found pursuant to the warrant."  *Commonwealth v. Farrar*, No. 0640,

Jan. 1996 Term, slip op. at 4.  Finally, on PCRA appeal, petitioner framed the same issue in

terms of trial counsel error, arguing that trial counsel was ineffective for failing to argue a second

warrant was required.  The Pennsylvania Superior Court concluded that his claim was waived

because "appellant cites no legal authority for his principal premise, that a second search warrant

was required, but bases his argument solely on related unsupported conclusions."

*Commonwealth v. Farrar*, No. 1878 EDA 2003, slip op. at 3.

Farrar has not pointed to any instance in his case where a structural defect in the system

itself prevented his claim from being heard.[16]  *See, e.g., Boyd v. Mintz,* 631 F.2d 247, 250-51 (3d

Cir. 1980) (quoting "where the state provides the process but in fact the defendant is precluded

from utilizing it by reason of an unconscionable breakdown in that process, [federal habeas

relief] may still be warranted") (citation omitted); *see also Gilmore v. Marks*, 799 F.2d 51, 57 (3d

Cir. 1986) (observing that a state's failure to give at least colorable application of the correct

---

[16]To the extent that petitioner argues in his objections that PCRA counsel was ineffective
and prevented him from raising his Fourth Amendment claims, *Stone v. Powell* does not preclude
review of that claim.  *Kimmelman v. Morrison*, 477 U.S. 365, 378 (1986).  However, I found that
claim meritless, *supra* Section III.A, because ineffective PCRA counsel does not rise to the level
of a constitutional violation.  *Finley*, 481 U.S. at 554.

Fourth Amendment constitutional standard might amount to a denial of the opportunity for full

and fair litigation).   Rather, Farrar is alleging that the Pennsylvania courts decided his Fourth

Amendment claims incorrectly or incompletely, allegations which are insufficient to surmount

the *Stone* bar.  *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d. Cir. 2002).  Accordingly, federal

consideration of his Fourth Amendment claims is precluded under *Stone*, and those claims will

be dismissed.

### E.      Fifth Amendment Claims

Next petitioner argues that his Fifth Amendment rights were violated when the

suppression court allegedly made several erroneous rulings by  "sanctifying the questioning of

the fifteen-year-old petitioner,"[17] deciding that the police officer's questioning of petitioner did

not constitute custodial interrogation,[18] and admitting the fruits of the interview.  Magistrate

Judge Hart found all these claims to be procedurally defaulted.  In his objections, petitioner

argues that default should be excused.  After a *de novo* review of petitioner's claims, I will adopt

---

[17]Petitioner asserts, in "Ground seven" for habeas relief, that the "Suppression Court erred
in sanctifying the questioning of the fifteen year old Petitioner and its fruits where, though court
found in its listing of facts that officers requested permission from the father to question his
consent was uninformed whereby the questioning was unconstitutional."  Habeas Pet. 12.  To the
extent that this claim could be considered an attack on the suppression court's ruling that Roy
Farrar's consented to the interview of petitioner, that claim was addressed *supra* in section
III.C.2., as part of the court's discussion of petitioner's ineffective assistance of counsel claims.

[18]Petitioner asserts, in "Ground nine" for habeas relief, that the:

Suppression court erred where it ruled that officers' questioning was not custodial
interrogation and that *Miranda* warnings were not necessary.  By the weight of the
totality of the circumstances, officers throughout the circumstances of their
interrogation of the Petitioner established custody.  Despite this no *Miranda*
warnings were issued.  The statements recovered under the blanket of this
violation should have been disallowed.

Habeas Pet. 12.

Magistrate Judge Hart's findings and dismiss petitioner's claims.

Petitioner's Fifth Amendment claims are procedurally defaulted.  As discussed above, a claim is procedurally defaulted if the petitioner fails to properly exhaust his state court remedies and can no longer present his claim to the state courts.  *Coleman*, 502 U.S. at 732.   First, petitioner only raised this these claims in his *pro se* PCRA petition in the form of ineffective assistance of counsel claims.  Second, these claims were not presented in his counseled, amended petition and not preserved in the appeal of the denial of PCRA relief.  They are consequently unexhausted.  *Carpenter*, 296 F.3d at 146; *Trowery*, 45 Fed. Appx. at 207.  In addition, because Farrar had the opportunity to raise these claims on direct appeal, yet did not bring them until his *pro se* PCRA petition, the claims are waived under Pennsylvania law.  42 Pa.C.S.A. § 9544(b) (stating claims not presented at trial or on earlier appeal are waived and therefore, not grounds for PCRA relief). Thus, any attempt to present these claims in another PCRA petition would fail. As petitioner's claims are procedurally defaulted, I cannot consider them absent a showing of cause and prejudice or a fundamental miscarriage of justice.

Petitioner argues he has established cause because "all subsequent counsels were wholly ineffective where they failed to appeal the suppression court's holdings" regarding his alleged custodial interview.  Objections to Report & Recommendation 5-6.  However, these underlying claims of ineffective assistance of counsel must also be exhausted in order to constitute cause. *Carrier*, 477 U.S. at 489.  Here, petitioner has failed to bring these underlying claims on direct appeal to the state courts or properly address them in his amended PCRA petition.  Consequently, they are not properly exhausted and cannot serve as cause to excuse default. *Carpenter*, 296 F.3d at 146; *Trowery*, 45 Fed. Appx. at 207.  Furthermore, ineffective assistance of PCRA counsel cannot constitute cause to excuse default.  *Finley,* 481 U.S. at 554.  Given that petitioner has

25

failed to establish cause and prejudice, or a fundamental miscarriage of justice,[19] this court declines to address these defaulted claims.

**F.      PCRA Court's Alleged Failure to Address Petitioner's *Finley* Claims**

Farrar also contends that the PCRA court erred in failing to address the claims that petitioner raised in his *pro se* PCRA petition, but that appointed counsel concluded were meritless in his amended petition.[20]  Petitioner claims that because the court allowed counsel to remain, these claims were not addressed either on direct or appellate PCRA review.  Magistrate Judge Hart found that petitioner's claim was procedurally defaulted.  While petitioner objects to this finding, I will overrule his objection.

Petitioner never fairly presented this claim of PCRA court error to the state courts, and consequently it is unexhausted.  In addition, petitioner's claim is procedurally defaulted because a future PCRA petition based on this claim would be time-barred.  42 Pa.C.S.A. § 9545.  Petitioner has not presented any evidence of his cause for default, or established a fundamental miscarriage of justice.  Nothing the state court did or stated prevented petitioner from filing another PCRA petition to assert these alleged errors.[21]  Therefore, I will deny relief to petitioner on this claim.

## IV. CONCLUSION

---

[19]See *supra* section III.B.

[20]In "Ground six" for habeas relief, Farrar argues that the "PCRA court erred where it failed to address *Finley* claims and permitted counsel to remain where his presence prevented Petitioner from exorcising [sic] appeal."  Habeas Pet. 11.

[21]In addition, petitioner's claim is meritless because Pennsylvania state law provides that when a petitioner is appointed counsel in the state court, the court is not required to take the petitioner's *pro se* petitioners into consideration.  *Commonwealth v. Pursell*, 724 A.2d 293 (Pa. 1999).

For all of the above stated reasons, petitioner's objections to Magistrate Judge Hart's Report and Recommendation are overruled, and the § 2254 petition is dismissed and denied.  The court must now determine whether a certificate of appealability should issue.  A court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires that the defendant "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has determined that Farrar's ineffective assistance of counsel claims, his Fourth and Fifth Amendment claims, and his claim of PCRA court error are without merit.  The court is persuaded that reasonable jurists would not find this assessment debatable or wrong.  Therefore, Farrar has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROYCE HAMPTON FARRAR,

Petitioner,

       CIVIL ACTION

   v.

       NO. 05-2663

EDWARD KLEM, *et al.*,

Respondents.

## Order

And now, this _____ day of March 2006, upon careful consideration of the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, the response, the Report and Recommendation of United States Magistrate Judge Jacob P. Hart, and petitioner's objections, it is hereby ORDERED that:

1.     Petitioner's objections are OVERRULED.

2.     The Report and Recommendation of United States Magistrate Judge Jacob P. Hart is APPROVED and ADOPTED.

3.     The petition for writ of habeas corpus is DISMISSED and DENIED.

4.     The petitioner having failed to make a substantial showing of the denial of a constitutional right, there is no ground to issue a certificate of appealability, *see* 28 U.S.C. § 2253(c).

5.     The Clerk shall CLOSE this case statistically.

                        s/ William H. Yohn, Jr., Judge

                        William H. Yohn, Jr., Judge